IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 20-cv-00977-PAB-SKC

JESUS MARTINEZ, and
CHAD HUNTER,

Plaintiffs, on their own and on behalf of a class of similarly situated persons,

v.

STEVEN REAMS, Sheriff of Weld County, Colorado, in his official capacity,

Defendant.

---

**ORDER**

---

This matter is before the Court on the parties' Joint Motion for Preliminary Approval of Class Action Settlement [Docket No. 96]. On April 7, 2020, plaintiffs brought this case as a class action alleging that defendant Sheriff Steven Reams acted with deliberate indifference to the health of medically vulnerable persons in custody at the Weld County Jail ("WCJ") by failing to take necessary measures to prevent the spread of COVID-19. Docket Nos. 1, 7 at 25-27.

## I. BACKGROUND

On April 7, 2020, plaintiffs filed a motion for a temporary restraining order, preliminary injunction, and expedited hearing. Docket No. 1. Plaintiffs later withdrew the portion of their motion seeking a temporary restraining order. Docket No. 29. On April 30, 2020, the Court conducted a hearing on plaintiff's preliminary injunction motion. Docket No. 52. On May 11, 2020, the Court issued a preliminary injunction

that identified actions defendant had to take to identify and protect medically vulnerable inmates at WCJ.  *See generally* Docket No. 55.  This preliminary injunction has been extended several times and is currently set to expire February 5, 2021**.**  Docket No. 99.

The parties have engaged in negotiations in order to reach a settlement, and on November 30, 2020, they filed a Joint Motion for Preliminary Approval of Class Action Settlement, Certification of a Class and Appointment of Class Counsel, and Permission to Post Class Notice.  Docket No. 96.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y.

2

2011)).  If the parties meet the requirements for preliminary approval, the Court will

direct notice to all class members who would be bound by the proposal and hold a

fairness hearing to determine if

> it is fair, reasonable, and adequate after considering whether: (A) the
> class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief
> provided is for the class is adequate, taking into account (i) the costs,
> risks, and delay of trial and appeal; (ii) the effectiveness of any proposed
> method of distributing relief to the class, including the method of
> processing class-member claims; (iii) the terms of any proposed award of
> attorney's fees, including timing of payment; and (iv) any agreement
> required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

 Fed. R. Civ. P. 23(e)(2).  Though the standards for preliminary approval are not as

stringent as those for final approval, the final approval standards inform the Court's

preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement

was fairly and honestly negotiated, (2) serious legal and factual questions placed the

litigation's outcome in doubt, (3) the immediate recovery was more valuable than the

mere possibility of a more favorable outcome after further litigation, and (4) [the parties]

believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky*

*Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille*

*v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

District courts have broad discretion in granting or denying class certification.

*Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso* ("*Shook II*"), 543 F.3d 597, 603

(10th Cir. 2008).  "[C]ertification is proper only if 'the trial court is satisfied, after a

rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). In the typical case where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso* ("*Shook I*"), 386 F.3d 963, 968 (10th Cir. 2004)). Here, the parties jointly move for certification for the purposes of settlement only. Docket No. 96 at 10 n.2 (defendant reserves the right to contest class certification if settlement is not approved). Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A class action may be sustained if these requirements are satisfied, and the class meets the requirements of one of the categories of Rule 23(b). Fed. R. Civ. P. 23(b).

The parties seek to certify the class under Rule 23(b)(2), Docket No. 96 at 10, which states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) certification imposes two independent but related requirements: defendant's actions or inaction must be based on ground

4

generally applicable to all class members, and the injunctive relief must be appropriate for the class as a whole. *Shook II,* 543 F.3d at 604.

## III.  ANALYSIS OF PROPOSED SETTLEMENT

### A. Overview of Proposed Settlement Agreement

The parties seek certification of a settlement class consisting of

All past, present, and future inmates housed within the Weld County Jail from April 7, 2020 through the "COVID-19 Emergency End Date" who are "medically vulnerable."

An inmate is "medically vulnerable" if, pursuant to CDC guidelines for correctional facilities like the WCJ which exist as of the date this proposed Consent Decree and Final Judgment was submitted to the Court, the inmate has one or more of the following conditions: is 65 years and older; has chronic lung disease including COPD; has moderate to severe asthma; has serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies; has sickle cell disease; is immunocompromised; has severe obesity (e.g. BMI of 30 or higher); has diabetes; has chronic kidney disease and is undergoing dialysis; has liver disease; has cancer; is pregnant; or is a former or current cigarette smoker.

The "COVID-19 Emergency End Date" is the date on which Executive Order  D 2020 205 issued by Colorado Governor Jared Polis, Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado, as subsequently amended or extended, expires and is not replaced by a similar Executive Order in light of the ongoing COVID-19 pandemic.

Docket No. 96 at 9.  There are no subclasses to the settlement agreement.  Key terms of the proposed settlement include that: (1) WCJ will identify medically vulnerable inmates during booking, protect them during the remainder of the intake process to the extent possible, and provide them with a document stating their status; (2) WCJ will attempt to single-cell medically vulnerable inmates in the intake/transition units and will continue to limit their exposure in the general jail population; (3) WCJ will medically

isolate COVID-19 positive inmates in a non-punitive environment; (4) WCJ will continue enhanced sanitation and will distribute masks to inmates; (5) healthcare processionals will monitor medically vulnerable inmates for COVID-19 symptoms and will provide testing to inmates consistent with CDC guidelines; (6) defendant will maintain modified arrest standards to reduce jail population and will advise Weld County police chiefs to be judicious with jail space on a regular basis; (7) every two weeks, WCJ will provide the Chief Judge for the Nineteenth Judicial District of Colorado and the Colorado Division of Adult Parole a list of all inmates housed at WCJ, with a request to the Chief Judge for a docket review for potential judicial action; (8) defendant will comply with data reporting requirements and plaintiffs' counsel will not make additional requests; (9) plaintiffs and the class will release claims for injunctive and declaratory relief arising from COVID-19 at the WCJ, but that does not include claims concerning conduct that occurs after the date the Consent Decree is entered, and it does not include any money damages claims; (10) defendant will pay counsel for plaintiffs $122,387.60 in attorney's fees and costs; and (11) there is no admission of wrongdoing by defendant.  Docket No. 96 at 5-8.

The parties propose to post notice of the proposed settlement in "portions of the WCJ that house medically vulnerable inmates where it is visible to them."  *Id.* at 16. The parties have attached their proposed class notice as Exhibit B to their motion. Docket No. 96-5.  The notice advises class members who wish to object to the settlement to mail an objection to the Court.  *Id*. at 3-4.  The parties do not indicate how this method of posting notice would supply notice to "past" or "future" inmates or to a medically vulnerable inmate who may not have been placed in the proper area.

**B.  Numerosity**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed at a certain number; however, the Tenth Circuit has never adopted a minimum presumption. *Trevizo v. Adams*, 455 F.3d 1155, 162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).  The parties estimate that 69% of WCJ's current population of 500 inmates is medically vulnerable under CDC guidance, which puts the proposed current members of the class at 345 persons.  *See* Docket No. 96 at 11.  Additionally, the proposed class includes past inmates and unknown future detainees who are medically vulnerable.  *Id.*  The parties do not provide an estimate of past inmates who are part of the proposed class.  *See id*. at 10-11.

The inclusion of past and future inmates raises issues.  The parties define the class as "[a]ll past, present, and future inmates housed within the Weld County Jail from April 7, 2020 through the 'COVID-19 Emergency End Date' who are 'medically vulnerable.'"  *Id.* at 9.  The parties do not define what they mean by "past" inmates.  If "past" inmates means inmates who have been released, the parties have not indicated how past inmates will benefit from the requested injunctive relief or how they will receive notice.  Even if the "past" inmates received notice, the parties do not explain what objections they might have or the risk of confusion they might experience.  Similarly, as to "future" inmates, the parties do not define the term or indicate how the

7

proposed notice posting would provide notice to future inmates.  Moreover, even if "future" inmates are included simply in anticipation of turnover among the jail population, it is unclear to the Court why the class definition requires the inclusion of future inmates when the proposed relief extends for a defined period of time and covers all medically vulnerable inmates during that time.

Because the parties have not supplied information about the number of "past" or "future" inmates, the Court considers whether the numerosity requirement is met by the number of current inmates who are medically vulnerable.  "[W]hen injunctive relief is the only relief requested, even speculative or conclusory representations regarding numerosity will suffice to permit class certification."  *Goodnight v. Shalala*, 837 F. Supp. 1564, 1582 (D. Utah 1993) (citing *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977)).  The Court agrees that joinder of approximately 345 current inmates would be impracticable and the Court finds that the numerosity requirement is met.

### C.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  Commonality requires that the plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of

each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.  Even a single

common question will satisfy commonality.  *Id.* at 359.

The parties argue that commonality is met here because the questions of

whether WCJ's conduct has exposed the class to harm or to a substantial risk of harm

due to deliberate indifference are common the class.  Docket No. 96 at 12.

Additionally, the proposed consent decree represents a common answer.  *Id.*

"What matters to class certification . . . is not the raising of common 'questions'

– even in droves – but rather, the capacity of a class-wide proceeding to generate

common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at

350 (citation omitted).  The Court agrees that the proposed class meets this standard.

Plaintiffs allege that defendant exhibited deliberate indifference to the risk of COVID-19

on medically vulnerable inmates.  In *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El

Paso*, the district court denied certification for mentally ill inmates at the El Paso

County Jail because "[e]valuation of the claims asserted on behalf of the class would

require examination of the unique circumstances surrounding each incident alleged to

constitute a constitutional deprivation."  No. 02-cv-00651-RPM, 2006 WL 1801379, at

*9 (D. Colo. June 28, 2006), *aff'd, Shook II*, 543 F.3d at 600.  By contrast, the relief in

this case will not require an examination of unique circumstances – once an inmate is

categorized as medically vulnerable, the proposed relief would apply to that person.

Accordingly, the Court finds that the proposed settlement class satisfies the

commonality requirement.  Fed. R. Civ. P. 23(a)(2).

**D.  Typicality**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence.  *Falcon*, 457 U.S. at 157 n.13.  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "[I]t is well-established that a proposed class representative is not typical under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (internal quotations omitted).

The parties argue that typicality is met here for the same reason as commonality and because plaintiffs are medically vulnerable and face the same potential harms of the proposed class.[1]  Docket No. 96 at 13.  The named plaintiffs,

---

[1] Plaintiffs brought their Eighth Amendment claim on behalf of "persons in carceral custody," while their Fourteenth Amendment claim was brought on behalf of pretrial detainees.  *See* Docket No. 7 at 25-27.  While the Eighth Amendment claim has both an objective component, "whether the alleged wrongdoing was objectively harmful enough," and a subjective component, "whether the officials acted with a sufficiently culpable mind," the Fourteenth Amendment claim requires only a showing of the objective component.  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (internal quotations omitted) (recognizing that *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) abrogated prior Tenth Circuit caselaw that treated the Eighth and Fourteenth Amendment analyses as identical).  In its order on plaintiffs' motion for preliminary injunction, the Court found that plaintiffs satisfied their burden under the Eighth Amendment standard.  Docket No. 55 at 18 n.9.  Therefore, the Court finds that these

10

Jesus Martinez and Chad Hunter,[2] fall within high-risk populations who are particularly vulnerable to COVID-19 and are currently being held at WCJ.  Docket No. 96 at 9.  Mr. Martinez is 33 years old and suffers from diabetes, asthma, high blood pressure, and is currently overweight.  Docket No. 7 at 8.  Mr. Hunter is 46 years old, is hypoglycemic, has a history as a smoker, and has a history of substance abuse disorder.  *Id.* at 10.  Both of these plaintiffs meet the proposed definition of "medically vulnerable" inmates.  *See* Docket No. 96 at 9 (including persons who have diabetes and are former cigarette smokers in the definition of medically vulnerable).  Typicality "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims," *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980), which allows self-interested litigation by the named plaintiffs to necessarily advance the interests of the class as a whole.  1 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*"), § 3:29.  The named plaintiffs face similar risks as other medically vulnerable inmates due to the contagious nature of COVID-19.  The named plaintiffs are not subject to any "unique defense[s]," *see Marcus*, 687 F.3d at 599, and the pursuit of the requested relief for themselves will advance the interests of the class as

---

two separate legal theories do not defeat typicality.

[2] Defendant's response to plaintiffs' motion for class certification states that Mr. Hunter was released on April 15, 2020.  Docket No. 64 at 2.  However, the parties' joint motion for preliminary approval of the class action settlement, filed on November 30, 2020, states that Mr. Hunter is currently being held at WCJ.  Docket No. 96 at 9.  While Mr. Martinez is a pretrial detainee, Docket No. 64 at 2, the parties do not indicate if Mr. Hunter is currently a pretrial detainee or is serving a sentence.  *See* Docket No. 96 at 9.  However, because the proposed class definition makes no distinction between medically vulnerable inmates in pretrial versus carceral custody, Docket No. 96-1 at 1-2, this distinction is not material to class certification.

a whole.  *See Newberg,* § 3:29.  Therefore, the Court agrees that the named plaintiffs

bring claims that are typical of the proposed class – namely, that they are medically

vulnerable and defendant has exhibited deliberate indifference to the harm that

COVID-19 could cause them.

### E.  Adequacy of Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has

noted, the "adequacy-of-representation requirement tends to merge with the

commonality and typicality criteria of Rule 23(a), which serve as guideposts for

determining whether maintenance of a class action is economical and whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence."  *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotations omitted).

As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest

between named parties and the class they seek to represent."  *Id.* at 625.  To be an

adequate class representative, the "representative must be part of the class and

possess the same interest and suffer the same injury as the class members."  *Id*. at

625-26.  The Court has found that the named plaintiffs bring claims typical of the

proposed class and face the same potential harms.  *See* Section III.D, *supra*.

The Tenth Circuit has identified two questions relevant to the adequacy of

representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted).  Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

The parties argue that there is adequate representation because there is no conflict between the named plaintiffs and the absent class members and because plaintiffs' attorneys are well-qualified in class action and civil rights matters.  Docket No. 96 at 13-14.  With regard to the first factor, the Court finds that the interests of the class are fairly and adequately protected by the named plaintiffs.  There is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts.  *See Amchem*, 521 U.S. at 611-12.  With regard to the second adequacy factor, plaintiffs' attorneys are the ACLU of Colorado; Killmer, Lane and Newman, LLP; Hutchinson Black and Cook, LLC; Stimson Stancil Labranche Hubbard, LLC; and Maxted Law, LLC.  Docket No. 96 at 15.  They maintain that they are qualified to represent this action, and there appears to be no dispute as to their qualifications.  *See id.*  The Court finds that counsel and the named plaintiffs adequately represent the interests of the class of all current and future WCJ inmates who are medically vulnerable

### F.  Rule 23(b)(2)

Rule 23(b)(2) certification imposes two independent but related requirements: defendant's actions or inaction must be based on grounds generally applicable to all

class members and the injunctive relief must be appropriate for the class as a whole. *Shook II,* 543 F.3d at 604. "The rule therefore authorizes an inquiry into the relationship between the class, its injuries, and the relief sought, and we have interpreted the rule to require that a class must be 'amenable to uniform group remedies.'" *Id.* (quoting *Shook I*, 386 F.3d at 973). Rule 23(b)(2) requires that a single injunction provides relief to each member of the class. *Wal-Mart*, 564 U.S. at 360. The Tenth Circuit has described two requirements of Rule 23(b)(2):

> [T]he class must be sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d) – namely, the requirement that it state its terms specifically; and describe in reasonable detail the act or acts restrained or required . . . . Second, [a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.

*Shook II*, 543 F.3d at 604 (internal citations and quotations omitted).

The parties argue that certification under Rule 23(b)(2) is appropriate because plaintiffs seek uniform standardized procedures to protect inmates from COVID-19. Docket No. 96 at 14. Defendant's actions and inactions are based on grounds generally applicable to all class members. *See Shook II*, 543 F.3d at 604. Plaintiffs allege that defendant is exhibiting deliberate indifference to the impact of COVID-19 on all medically vulnerable inmates, Docket No. 96 at 1, making the ground generally applicable to the class. The Court finds that a single injunction would provide relief to all class members and relief would not need to be specifically tailored to each class member. *See Wal-Mart*, 564 U.S. at 360; *Shook II*, 543 F.3d at 604. The proposed consent decree is "sufficiently cohesive" to satisfy Rule 65(d) and does not avoid

14

"individual issues . . . by formulating an injunction at a stratospheric level of abstraction." *Shook II*, 543 F.3d at 604.  The Court finds that preliminary certification under Rule 23(b)(2) is appropriate.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

Based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval. The proposed consent decree was the product of months of arms-length negotiations between the parties. Docket No. 96 at 3. These negotiations took place after the parties had vigorously litigated a motion for preliminary injunction, which the Court granted. Docket No. 55 at 3 n.2 ("The parties also submitted a volume of exhibits to the Court more typical of a four-day jury trial than a preliminary injunction hearing."). The Court finds that the negotiations were done fairly and honestly.

Plaintiffs believe they would have prevailed at trial, but were uncertain what the scope of relief would be. Docket No. 96 at 4. Defendant maintains that he would have prevailed at trial. *Id.* While plaintiffs prevailed at the preliminary injunction phase, *see* Docket No. 55, plaintiffs must consider the likelihood of success of certifying a class, surviving summary judgment, and succeeding at trial. Additionally, as plaintiffs note, the scope of relief in an action such as this one is uncertain, particularly given the rapidly evolving nature of the COVID-19 pandemic. Accordingly, the Court finds that this factor weighs in favor of the proposed settlement.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief. This factor clearly weighs in favor of the

proposed settlement.  The country is still in the grip of the COVID-19 pandemic.  This makes implementation of the COVID-19 measures in the proposed settlement agreement much more valuable than waiting until a trial in mid-2021.  While the Court has continued to extend the preliminary injunction, most recently until February 5, 2021, Docket No. 99, the plaintiffs cannot rely on continued extensions until the trial date.  This factor weighs strongly in favor of the proposed settlement.

The final factor the Court must consider is whether the proposed settlement is fair and reasonable.  The parties argue that it is because the parties started with the Court's preliminary injunction as a baseline, considered each parties' requests for modifications, and considered plaintiffs' request for attorney's fees.  Docket No. 96 at 4-5.  The parties list some of the key aspects of the proposed settlement, which are stated in this order under Section III.A.  It is evident that the parties believe that the proposed settlement is fair and reasonable and was negotiated at arms-length by experienced counsel.  Should a current inmate find the terms unfair, he or she may file an objection to the proposed settlement.  *Cf. In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (finding that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness is sufficient to preliminary approve the settlement agreement.

## IV.  NOTICE

Notice is not required to certify a class under Rule 23(b)(2).  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule . . . [23](b)(2), the court *may* direct appropriate notice to the class.") (emphasis added); *Wal-Mart*, 564 U.S. at 362 ("The

Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."); *Shook II*, 543 F.3d at 611 ("Rule 23(c)(2) makes notice . . . optional for (b)(2) classes.").

Despite this, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  The parties propose to post notices in portions of WCJ that house medically vulnerable inmates.  Docket No. 96 at 16.  The proposed notice describes the background of the case, lists key terms of the proposed settlement, and states that a current inmate may object to the proposed settlement by mailing an objection to the Clerk of Court.  Docket No. 96-5.  The parties argue that posted notice is sufficient because (1) the Court has already made substantial factual findings about COVID-19 and WCJ, so objections about the scope of the proposed consent decree will add little new information; (2) the proposed consent decree shows the steps that defendant and WCJ will take to protect medically vulnerable inmates, and it would be a drain on staff resources to distribute and collect individual notices; and (3) inmates were adequately represented by class counsel.  *Id.* at 16-17.

"[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The standard under Rule 23(e)(1)(B) is a lower standard than the "best notice practicable under the circumstances" required by a Rule

18

23(a)(3) class, which itself does not require actual notice. *See DeJulius*, 429 F.3d at 943-44. Instead, "[d]ue process does not require notice for absent class members in all actions under Rule 23(b)(2), as long as the class members were adequately represented." *Pelt v. Utah*, 539 F.3d 1271, 1289 (10th Cir. 2008).

The Court finds the parties' first two justifications for posted notice – that the Court has already held an evidentiary hearing so objections about the scope of the proposed settlement will add little, and that the proposed settlement shows the steps defendant and WCJ will take to protect medically vulnerable inmates, Docket No. 96 at 16 – are unrelated to the procedural issue of whether or not notice is reasonably calculated to inform class members of the proposed settlement and the opportunity to object. The parties' third justification, that it would be an unnecessary expenditure of resources to prepare and distribute individualized notices, is similarly unavailing because it is unrelated to whether posted notice will reach the desired class members. Finally, while adequate representation by class counsel is necessary for preliminary certification, it is not sufficient to make any type of notice "reasonable."

Additionally, the proposed notice provided by the parties advises inmates to mail objections to the Clerk of Court. Docket No. 96-5 at 4. The parties have identified no authority for identifying the Court or the Clerk of Court as the recipient of class action objections. To the contrary, the practice in this Court is for plaintiffs' counsel or a third party administrator to process the objections. *See, e.g.*, *Menocal et al v. The GEO Group, Inc.*, No. 14-cv-02887-JLK-MEH, Docket No. 163 at 4 ¶ 7 (D. Colo. Jan. 14, 2019) (approving notice procedure where class counsel selected third party administrator).

The parties' vague statement that WCJ will "post notice in portions of the WCJ that house medically vulnerable inmates where it is visible to them" does not allow the Court to determine whether such notice will reasonably appraise class members of the proposed settlement.  *See* Docket No. 96 at 16.  The parties do not indicate how this procedure would provide notice to "past" or "future" class members or medically vulnerable inmates who are placed in the wrong area of the jail.  *See id.* at 16-17. Moreover, they do not discuss whether such notice will be provided in both English and Spanish.  *See id.*  If the parties revise the definition of class members, some of these issues may disappear.  And perhaps there is no reason to believe that medically vulnerable detainees will be inadvertently assigned to the wrong area.  However, before approving the proposed settlement, the Court needs more information on these issues.  Therefore, the Court finds that the proposed notice procedure is not reasonably calculated to apprise class members of the settlement.

## V.  CLASS COUNSEL

When certifying a class, a Court "must appoint class counsel."   Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  Plaintiffs' current attorneys – the ACLU of Colorado; Killmer, Lane and Newman, LLP; Hutchinson Black and Cook, LLC; Stimson Stancil Labranche

Hubbard, LLC; and Maxted Law, LLC – request to be appointed class counsel. Docket No. 96 at 15. Plaintiffs' attorneys state that they are experienced civil rights lawyers who have years of experience handling class actions in federal and state courts. *Id.* Counsel have sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment. Similarly, counsel have demonstrated that they have the resources to commit to the litigation. It is unusual to appoint five law firms for a class of about 345 people. However, in this case there is no common fund constituting the settlement, so attorneys' fees will not diminish the fund to the detriment of the class. Instead, the settlement includes a set amount of fees. Docket No. 96 at 8. Importantly, the relief to the class is injunctive, not monetary. *Id.* Therefore, the Court finds that it is appropriate to appoint plaintiffs' counsel as class counsel. *Cf. Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1087 (D. Colo. 2016) (appointing one law firm lead counsel and three other law firms as additional class counsel).

## VI. PRISON LITIGATION REFORM ACT ("PLRA")

The PLRA[3] requires that, before approving a class settlement in a prison condition case, the Court must find that the relief is "narrowly drawn." 18 U.S.C. §§ 3626(a)(1), (c)(1). Under the PLRA, relief is narrowly drawn if it "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive

---

[3] This statute extends to relief requested by pretrial detainees. *See* 18 U.S.C. § 3626(g)(3) (defining "prisoner" as, among other things, "any person subject to incarceration . . . who is accused of . . . violations of criminal law"). The Weld County Jail is a "prison" within the meaning of the statute. *See id*. § 3626(g)(5) (defining "prison" as, among other things, any "local facility that incarcerates or detains [individuals] accused of . . . violations of criminal law").

means necessary to correct the violation of the Federal right."  *Id.* at § 3626(a)(1).  In determining whether the proposed relief is narrowly drawn, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  *Id.*  However, "Congress did not intend the PLRA to alter class certification requirements under Rule 23."  *Shook I*, 386 F. 3d at 971.  The Court must determine whether class certification is appropriate before turning to the question of whether the proposed relief complies with the PLRA.  *See id.*

Part of the proposed settlement requires the WCJ to keep its population as low as possible, while protecting public safety.  Docket No. 96-1 at 3.  Currently, the WCJ will accept detainees charged with class three felonies, felonies enhanced by "VRA/Domestic Violence,"[4] misdemeanor charges enhanced by "VRA/Domestic Violence," protection order violations, and probation and parole warrants.  Docket No. 85-2 at 2.  WCJ does not currently accept detainees arrested on municipal warrants, civil commitments, or detox refusals.  *Id.*  The proposed settlement requires WCJ to maintain this standard until the COVID-19 Emergency End Date or until the WCJ housing unit that is currently closed for construction is reopened.  Docket No. 96-1 at 6. If the housing unit reopens before the COVID-19 Emergency End Date, then a different set of less stringent intake measures will apply to keep the WCJ population low while maintaining public safety.  *Id.*

The Court finds that the proposed relief is narrowly drawn and any impact on public safety has been mitigated.  The Court finds that the proposed settlement

---

[4] The parties' motion does not define "VRA," but the Court presumes that if refers to the Colorado Victim Rights Act, Colo. Rev. Stat. § 24-4.1-301 *et. seq.*

22

agreement complies with the PLRA because the majority of its provisions are applicable only to medically vulnerable inmates, *but see* Docket No. 96 at 6 (providing two cloth masks per non-medically vulnerable inmates), and it remains in effect only during the length of the pandemic.  *Id.* at 9 (setting the COVID-19 Emergency End Date to the expiration of Executive Order D 2020 205 Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado).  Additionally, the policies restricting the persons the WCJ will accept have been in place since September 2, 2020, with no evidence of any adverse impact on public safety.  *See* Docket No. 85-2 at 1.

## VII.  CONCLUSION

The Court will hold in abeyance a decision on the Joint Motion for Preliminary Approval of Class Action Settlement, Certification of a Class and Appointment of Class Counsel, and Permission to Post Class Notice [Docket No. 96] so that the parties can supplement their motion.  The supplemental briefing shall discuss locations for posting notice within the WCJ in English and Spanish, the location for sending objections that does not involve the Court, and inclusion of "past" and "future" inmates in the definition of the class.

Wherefore, it is

**ORDERED** that the parties shall file supplemental briefs **on or before**

**December 18, 2020**.


DATED December 11, 2020

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge