IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00977-PAB-SKC

JESUS MARTINEZ; and
CHAD HUNTER,

     Plaintiffs, on their own and on behalf of a class of similarly situated persons,

v.

STEVEN REAMS, Sheriff of Weld County, Colorado, in his official capacity,

     Defendant.

---

## CONSENT DECREE AND FINAL JUDGMENT

---

     For good cause shown, including based on the evidence admitted at the evidentiary hearing in this matter on April 30, 2020, and in light of the parties' stipulation to the terms set forth below, the Court now Orders as follows:

## I. DEFINITIONS

     "COVID-19" means the disease caused by the 2019 novel coronavirus SARS-CoV-2 and all strains thereof.

     "Plaintiffs" means Plaintiffs Jesus Martinez and Chad Hunter.

     "Inmates" means and includes persons who are housed within the Weld County Jail, including all persons who are sentenced to the Weld County Jail, pretrial detainees, or on sentence holds for the Colorado Department of Corrections.

     "Class" means all present and future inmates housed within the Weld County Jail from April 7, 2020 through the COVID-19 Emergency End Date (as defined herein) who meet the definition of "medically vulnerable inmates" as defined herein.

"Defendant" means Steven Reams, in his official capacity as the Sheriff of Weld County.

"WCJ" means Weld County Jail.

"Preliminary Injunction Order" means this Court's Order dated May 11, 2020 preliminarily enjoining conduct described therein, as subsequently amended and extended.

"CDC" means the Centers for Disease Control and Prevention within the United States Department of Health and Human Services.

"EPA" means the United States Environmental Protection Agency.

"Medically vulnerable" means inmates who, pursuant to CDC guidelines for correctional facilities like the WCJ which exist as of the date the proposed Consent Decree and Final Judgment was submitted to the Court, have one or more of the following conditions: are 65 years and older; have chronic lung disease including COPD; have moderate to severe asthma; have serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies; have sickle cell disease; are immunocompromised; have severe obesity (e.g. BMI of 30 or higher); have diabetes; have chronic kidney disease and are undergoing dialysis; have liver disease; have cancer; are pregnant; or are former or current cigarette smokers.

## II.  RECITALS

A.      On or about April 7, 2020, Plaintiffs filed a Complaint in the above-captioned civil action, Civil Action No. 1:20-cv-00977-PAB-SKC (the "Lawsuit"), in which they asserted official capacity claims against Defendant contending their constitutional rights were violated in connection with Defendant's response to COVID-19 at the WCJ,

and seeking declaratory relief, injunctive relief, and attorney fees and costs only, and not any compensatory or punitive damages.

      B.     On or about May 11, 2020, the Court entered the Preliminary Injunction Order in the Lawsuit.

      C.     Plaintiffs filed a Motion for Class Certification.

      D.     The Parties to the Lawsuit consent to this Consent Decree and Final Judgment as a settlement and compromise to resolve the Lawsuit.

### III.  TERMS AND CONDITIONS

#### A.  Class Certification.

The Parties submitted a Joint Motion for Preliminary Approval of Class Action Settlement, Certification of a Class and Appointment of Class Counsel, and Permission to Post Class Notice. Docket No. 96. The motion specified the manner of providing notice to class members, which was agreed to by all parties, and paid for by Defendant. The Court ordered supplemental briefing on the issues of notice and the definition of the class, which the parties provided. Docket Nos. 100, 101.

#### B.  Full Release of Claims and Commitments from Plaintiffs

**(1)    Release of Claims.**  Except with respect to the relief provided in this Consent Decree and Final Judgment, Plaintiffs, on behalf of themselves and for and on behalf of the Class as is reflected in the aforementioned joint motion for preliminary approval of the class settlement, as updated by the parties' joint supplement, hereby release and forever discharge Defendant and all employees of Defendant and/or of the Weld County Sheriff's Office from any and all claims or causes of action for injunctive and declaratory relief concerning or relating in any manner to COVID-19, which may have accrued up to and including the date of this Order (including all attorney fees,

costs, and expenses which do or may relate thereto), and which would seek, by means of declaratory or injunctive relief, to address subject matters governed by this Order. Plaintiffs further understand that factual matters now unknown to them may have given or may hereinafter give rise to disputes that are currently unknown, unanticipated, and unsuspected. Plaintiffs, on behalf of themselves and for and on behalf of the Class as is reflected in the aforementioned joint motion for preliminary approval of the class settlement, as updated by the parties' joint supplement, acknowledge this Consent Decree is intended to and does release both known and unknown claims and causes of action for injunctive and declaratory relief, including those which would seek by means of declaratory or injunctive relief to address subject matters governed by this Order.

(2)  **Restriction on CORA Requests.**  Neither Plaintiffs, nor counsel when acting on behalf of Plaintiffs or members of the Class, nor employees or agents of Plaintiffs, shall request or cause to be requested from Defendant or any employee of the Weld County Sheriff's Office under the Colorado Open Records Act or the Colorado Criminal Justice Records Act the following: (a) any information or documents relating to Defendant's response to COVID-19 at the WCJ; or (b) any information or data relating to average daily population or population statistics at the WCJ.

C. **Covenant Not to Sue**

Plaintiffs, on behalf of themselves and for and on behalf of the Class as is reflected in the aforementioned joint motion for preliminary approval of the class settlement, as updated by the parties' joint supplement, agree not to sue Defendant or any employee of the Weld County Sheriff's Office for injunctive or declaratory relief regarding or relating to COVID-19 for conduct that occurred prior to the date of this Consent Decree and Final Judgment.

4

**D.  Agreement Respecting Taxes**

Plaintiffs are responsible for any tax liability from any taxing authority with respect to the payment of Attorney Fees and Costs as specified below and Defendant shall have no tax liability with respect thereto.

**E.  Obligations of Defendant**

From the date of this Consent Decree and Final Judgment, until and including the date on which Executive Order D 2020 205 issued by Colorado Governor Jared Polis, Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado, as subsequently amended or extended, expires and is not replaced by a similar Executive Order in light of the ongoing COVID-19 pandemic (the "COVID-19 Emergency End Date"), Defendant shall:

(1) Identify all medically vulnerable inmates during the booking and intake process and inform any medically vulnerable inmates that they have been so designated. The scope of what makes an inmate medically vulnerable shall be updated to conform with current CDC guidance in the event the CDC modifies the aforesaid guidelines, which update shall be self-executing upon counsel for Defendant providing counsel for Plaintiffs and members of the Class either (a) an official order from the CDC which would be self-authenticating pursuant to Fed.R.Evid. 902(1), or (b) an equivalent official publication from the CDC's website which otherwise would be self-authenticating pursuant to Fed.R.Evid. 902(5).  All inmates must be asked if they have any of the conditions that would classify them as "medically vulnerable" as defined herein at intake.  The descriptions for screening questions must, at a minimum, mirror the level of specificity in the definition of "medically vulnerable" set forth above, and must be given in Spanish for persons who indicate a preference for conditions to be listed in Spanish.

The descriptions must also provide a list of the most common conditions that meet the definitions of "immunocompromised," and "liver disease."  Self-reported conditions are to be accepted as true unless and until there is definitive medical evidence to the contrary.  Until the process of determining whether inmates in intake have one or more of the aforesaid conditions which would cause them to be designated as medically vulnerable is completed, inmates should not be exposed to other inmates and should be exposed only to the smallest number of WCJ staff as possible.

(2) Take actions to keep the WCJ population as low as possible, while protecting public safety, so as to maximize the number of medically vulnerable inmates who can be housed in a single-cell, which shall consist of the following:

a. Maintain the "Emergency Arrest Standards Due To COVID-19/Jail Construction" included in ECF 85-2 filed with the Court in this Lawsuit until either the COVID-19 Emergency End Date or the date the WCJ housing unit closed for construction as indicated to the Court in ECF 85-2 is reopened, whichever is sooner.

b. Upon said housing unit being reopened, if sooner, subsequently maintain "Modification to Arrest Standards Due To COVID-19" attached hereto as **Exhibit A-1**, until the COVID-19 Emergency End Date.[1]

c. Retain the right no longer than the COVID-19 Emergency End Date, in Defendant's sole discretion, to reinstitute the "Emergency Arrest

---

[1] With respect to the offenses identified in Paragraph 4 under the heading "The Weld County Jail Will Accept" in **Exhibit A-1**, for anyone booked into the WCJ in the narrow additional categories specified in said Paragraph 4, Defendant will give notice to the Weld County Attorney, who will in turn notify counsel for the Class.

Standards Due To COVID-19/Jail Construction" included in ECF 85-2 filed with the Court in this Lawsuit, or substantially similar arrest standards if appropriate based on WCJ inmate population, per capita when considering all housing units then open and the housing units' then-current uses, increasing to a same or similar percentage level which motivated the filing of ECF 85-2 with the Court in this Lawsuit. If Defendant needs to reinstitute such Arrest Standards, Defendant by and through his counsel shall, contemporaneously with such reinstitution, notify Mark Silverstein at msilverstein@aclu-co.org and Nicole Loy at nloy@aclu-co.org.

d. Disseminate regular advisements to the Weld Chiefs of Police to be judicious about minimizing the scope of arrestees in their jurisdictions and maximizing the scope of persons who are issued a summons or given a bond upon personal recognizance in their jurisdictions.

e.  At least one time every fourteen days:

   i. Provide a list of all inmates currently housed in the WCJ to the Chief Judge of the District Court for Colorado's 19th Judicial District with a copy to Mark Silverstein at msilverstein@aclu-co.org and Nicole Loy at nloy@aclu-co.org, requesting a docket review for potential judicial action;

   ii. Provide a list of all inmates subject to parole holds to the Colorado Division of Adult Parole, requesting a review for potential parole action; and

   iii. Provide Mark Silverstein at msilverstein@aclu-co.org and nloy@aclu-co.org with an identification of which inmates in the WCJ are classified as "medically vulnerable" pursuant to this Consent Decree, for a lookback period of the prior fourteen days defined as the two-weeks-previous Monday at 05:00:00 AM through the previous Sunday at 05:00:01 AM, thus resulting in fourteen (14) days of reported data, at 05:00:00 AM each day of said lookback period. Mr. Silverstein, for himself and on behalf of all counsel who entered an appearance for Plaintiffs or the Class or both in the Lawsuit, agrees such identification shall be used only by counsel acting on behalf of Plaintiffs or members of the Class and shall be used only for class counsel purposes.

 f. With respect to each WCJ inmate classified as "medically vulnerable" as set forth herein and who is currently in WCJ general population or in the intake/transition units, or who may subsequently booked into the WCJ through and including the COVID-19 Emergency End Date, promptly furnish to each such inmate a written notification that such inmate has been classified as "medically vulnerable" and is at a higher risk for experiencing adverse health consequences from contracting COVID-19, if contracted, based on the intake screening of such inmate. This form will contain such inmate's name and date of birth, the date such inmate's intake screening was conducted, and the initials and/or signature of the medical professional who conducted it. An exemplar of this form is attached hereto as **Exhibit A-2**.

g.  If necessary to maintain low jail population within the WCJ, utilize statutory authority contained in C.R.S. § 17-26-109 to grant time credits to sentenced prisoners.

(3) Ensure the following respecting intake/transition units within the WCJ: medically vulnerable inmates admitted to WCJ's intake/transition units are housed in a cell within such unit alone and away from other inmates; if it is not possible to house a medically vulnerable inmate alone in a cell within an intake/transition unit due to the WCJ's physical layout, population level, and classification needs, the inmate must be housed in a cell within an intake/transition unit with no more than one other inmate, which inmate must also be a medically vulnerable inmate, in accordance with cohorting practices the Centers for Disease Control ("CDC") specifically outlines and endorses; and if despite this allowance, it still is not possible to house a medically vulnerable inmate either alone or with only one other medically vulnerable inmate in a cell within an intake/transition unit due to the WCJ's then-existing physical layout, population level, and classification needs, and no other option is apparent, Detentions Division Deputies will contact their Shift Sergeant for guidance immediately, and this existing policy will be maintained subject to the WCSO's maximum staffing ability.

(4) Ensure the following for all inmates:  Continue the WCSO's existing policy of ensuring, to the maximum extent possible considering the WCJ's physical layout, population level, and classification needs, the following respecting general population units within the WCJ: medically vulnerable inmates are treated as a Special Management population in the WCJ; upon completing the intake/ transition unit quarantine protocol and transferring to WCJ general population, a medically vulnerable inmate is not housed in a cell with an inmate who is not medically vulnerable and an inmate who is not medically

vulnerable is not housed in a cell with a medically vulnerable inmate; and medically vulnerable inmates remain in current cohorted "family units" to the extent they are cohorted only with one other medically vulnerable inmate in their cell.

(5) Allow the maximum amount of daily out-of-cell time WCJ can provide inmates while following cohorting and social distancing protocols.

(6) Require WCJ Detentions Division staff to ensure enhanced sanitation in the WCJ housing units; prior to medically vulnerable inmates entering any WCJ common area, which includes bathrooms, an EPA-approved disinfectant spray which combats COVID-19 as certified by the EPA will be sprayed on all surfaces open for use by such inmates, allowing for recommended contact time for complete disinfection to occur before such inmates enter; medically vulnerable inmates will be encouraged to practice social distancing continuously (to supplement the existing placement of thick black gaffers tape throughout the WCJ for visual representation of six feet apart from person to person), to disinfect any commonly used equipment on their way out and their way in, and to increase their own cleaning practices to include frequent hand washing and personal sanitation; medically vulnerable inmates who willfully refuse to adhere to recommended practices to prevent the spread of COVID-19 despite such encouragements will be noted in the WCJ records management system; personal hygiene supplies and bottles of an EPA-approved disinfectant spray will remain available to all inmates, inclusive of medically vulnerable inmates, without cost; in the event the WCJ inmate population reaches a low enough threshold that "medically vulnerable" inmates can be further distanced from non-"medically vulnerable" inmates, then they shall be, while recognizing that limiting movement from one housing unit to another to ensure prevention of cross-contamination from one population to another

population is consistent with public health guidance in a correctional setting; WCJ will maintain increased supplies of bottles of an EPA-approved disinfectant spray and masks to ensure all inmates have access to both masks and such disinfecting spray at all times; when necessary and only in a medically-sound manner that does not aerosolize droplets that may contain COVID-19 or otherwise lead to increased spread of COVID-19, power washers may be used on water-resistant surfaces, when applicable, to enhance cleaning; when necessary, only Trustee inmates who are both properly trained in biohazard cleanup and outfitted with proper personal protective equipment will be utilized to clean up areas previously occupied by an inmate confirmed to have tested positive for COVID-19.  WCJ shall provide increased professional cleaning services to augment the enhanced sanitation efforts of Detentions Division staff if warranted by the situation.

(7) Ensure that all inmates shall have access to at least two cloth masks or at least one disposable mask at all times. WCJ shall monitor mask usage by all inmates; all WCJ staff (and third-party contractors) shall be required to wear a face mask at all times when interacting in any manner with inmates, and WCJ shall monitor mask usage by such staff; WCJ shall provide reusable cloth masks to inmates who are not medically vulnerable and ensure such inmates are provided the opportunity to wash said cloth masks every three days; WCJ shall provide disposable masks to medically vulnerable inmates and such masks will be replaced in accordance with CDC guidelines and manufacturer recommendations, or sooner if said masks become soiled or damaged. WCJ will continue to provide a mask to all inmates who are released from the WCJ.

(8) Ensure medical monitoring for medically vulnerable inmates housed within the WCJ: qualified medical staff will perform four "daily checks" on medically vulnerable inmates consisting of temperature checks and full symptom screenings.

(9) Ensure that symptom screening shall be dictated, at minimum, by then-current CDC guidelines and will be according to the attached second updated screening protocol (attached as **Exhibit A-3** to this Consent Decree).

(10)   Provide testing for all inmates according to then-current CDC guidelines as soon as possible following the report of one or more symptoms for COVID-19 consistent with CDC screening questions, without imposing additional requirements beyond the CDC screening questions, although Defendant may make testing more frequently available. Testing shall be performed as soon as possible from the time of the report.  When an inmate tests positive for COVID-19 or is designated by a health care professional as presumptive positive for COVID-19, the WCJ will follow current CDC criteria for testing, quarantine, and isolation. These criteria have changed since CDC guidelines for correctional facilities were originally issued and may continue to change as new data points are made available to and accounted for by the CDC.

(11)   Continue implementation of the following protocol in both intake/transition units and general population units: an inmate in the WCJ who is symptomatic for or tests positive for COVID-19 is isolated in a medical isolation unit in the WCJ per current CDC criteria. These criteria have changed since CDC guidelines for correctional facilities were originally issued and may continue to change as new data points are made available to and accounted for by the CDC.

(12)    Ensure that medical isolation is a non-punitive environment and inmates shall have access to personal items, such recreational materials which can be effectively sanitized, and time outside of their cell while in medical isolation;

(13)  Continue to allow remote visitation for inmates with any visitor, including personal, jail-based behavioral, legal, or others; however, nothing in this agreement prohibits or discourages allowing for in-person visitation in compliance with CDC guidelines. Video visitation from the WCJ's front lobby shall remain a free service.

(14)  Provide informational updates to inmates housed within the WCJ, both via paper as appropriate and via video message, as to best practices on how to prevent the spread of COVID-19, which shall include, as part of the intake process, an initial viewing of a previously prepared video addressing best practices for preventing the spread of COVID-19;

(15)  Furnish to the ACLU of Colorado, via email to Mark Silverstein at msilverstein@aclu-co.org and Nicole Loy at nloy@aclu-co.org, on or before 11:59:59 PM Mountain Time on Tuesday of every week, the following WCJ data for the lookback period which is defined as the previous Monday at 05:00:00 AM through Sunday at 05:00:01 AM, thus resulting in seven (7) days of reported data, at 05:00:00 AM each day of said lookback period:

   a.  Average daily inmate population as logged at 05:00:00 AM each day of the lookback period;

   b.  Average daily population of medically vulnerable inmates as logged at 05:00:00 AM each day of the lookback period;

   c.  Total number of medically vulnerable inmates identified during the intake screening process each day of the lookback period.

    d.  Daily count of inmates housed in medical isolation units within the WCJ for each day of the lookback period;

    e.  Total number of COVID-19 tests administered to inmates each day during the lookback period and results of those tests (positive, negative, inconclusive); and

    f.  Total number of inmates transferred to a hospital for care each day during the lookback period due to COVID-19.

The procedures set forth above may be modified as necessary by further Order from the Court. In addition, as set forth in Section III.E.2 above, Defendant by and through his counsel shall furnish Mr. Silverstein with an identification of which inmates in the WCJ are classified as "medically vulnerable" pursuant to this Consent Decree, for a lookback period of the prior fourteen days defined as the two-weeks-previous Monday at 05:00:00 AM through the previous Sunday at 05:00:01 AM, thus resulting in fourteen (14) days of reported data, at 05:00:00 AM each day of said lookback period. Defendant shall furnish Mr. Silverstein with such identification every fourteen days, that is, with every other transmission of the data set forth in this paragraph which Defendant is furnishing to Mr. Silverstein on a weekly basis. Mr. Silverstein, for himself and on behalf of all counsel who entered an appearance for Plaintiffs or the Class or both in the Lawsuit, agrees such identification shall be used only by counsel acting on behalf of Plaintiffs or members of the Class and shall be used only for class counsel purposes.

## F. <u>Payment of Certain Attorney Fees and Costs Attributable to Counsel for Plaintiffs and the Class from Defendant By and Through the Weld County Board of County Commissioners</u>

Within twenty-one (21) days from the date the Court enters this Order in its final form, Defendant shall cause to be paid $122,387.60 as reimbursement for Attorney

Fees and Costs.  Plaintiffs, on behalf of themselves and for and on behalf of the Class

as is reflected in the aforementioned joint motion for preliminary approval of the class

settlement, as updated by the parties' joint supplement, agree that such payment is the

full and final amount they are entitled to receive for Attorney Fees and Costs in this

action for work performed through the date of this Consent Decree and Final Judgment,

and unless Defendant is held in contempt of court for not abiding by the terms of this

Consent Decree and Final Judgment, Plaintiffs and the Class will not seek any further

Attorney Fees and Costs with respect to the Lawsuit.  The Attorney Fees and Costs

shall be paid by check made payable to the "ACLU of Colorado Foundation" and

delivered to Mark Silverstein, Esq.  Defendant shall not withhold any federal, state, or

local taxes from the Attorney Fees and Costs, and an IRS Form 1099 will be issued to

the ACLU of Colorado Foundation.

**G.  Final Compromise, No Admissions**

All Parties agree and acknowledge: this Consent Decree and Final Judgment

constitutes a full and complete compromise of this Lawsuit; and no past or present

wrongdoing on the part of anyone will be implied by such commitment or by the

negotiations surrounding this Consent Decree and Final Judgment. The terms and

conditions of this Consent Decree and Final Judgment do not constitute and will not be

asserted to constitute any admission respecting any facts or liability for claims

whatsoever with regard to any aspects of this Lawsuit.

**H.  Binding Effect**

This Consent Decree will inure to the benefit of, and be binding upon, all

successors, assigns, personal representatives, and heirs (as applicable) of Plaintiffs, of

the Class as is reflected in the aforementioned joint motion for preliminary approval of the class settlement, as updated by the parties' joint supplement, and of Defendant.

**I.  Headings and Recitals**

The headings used in this Consent Decree and Final Judgment are for the convenience of the Parties only. As such, these headings will not have any legal effect whatsoever, or in any other way modify the meaning or interpretation of this Consent Decree and Final Judgment.

**J.  Modification of this Consent Decree and Final Judgment**

No provision of this Consent Decree and Final Judgment may be modified except by Order of the Court.

**K.  Need-Narrowness-Intrusiveness Findings**

The Court finds and concludes this Consent Decree and Final Judgment: has no adverse effect on public safety; does not have more than a minimal adverse effect on the operation of the criminal justice system; is narrowly drawn; extends no further than necessary to correct the violation of a Federal right; and is the least intrusive means necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1).

  2/16/2021
Date                                                              Chief United States District Judge

Dated and agreed to February 12, 2021, *nunc pro tunc* to November 30, 2020:

Daniel David Williams
Lauren Elizabeth Groth
HUTCHINSON BLACK & COOK, LLC
williams@hbcboulder.com
groth@hbcboulder.com

Mark Silverstein
Rebecca Teitelbaum Wallace
Sara R. Neel
AMERICAN CIVIL LIBERTIES UNION-
DENVER
msilverstein@aclu-co.org
rtwallace@aclu-co.org
sneel@aclu-co.org

Darold W. Killmer
David A. Lane
Andrew Joseph McNulty
Michael Paul Fairhurst
KILLMER LANE & NEWMAN LLP
dkillmer@kln-law.com
dlane@kln-law.com
amcnulty@kln-law.com
mfairhurst@kln-law.com

David George Maxted
MAXTED LAW LLC
dave@maxtedlaw.com

Jamie Hughes Hubbard
STIMSON STANCIL LABRANCHE
HUBBARD LLC
hubbard@sslhlaw.com

*Attorneys for Plaintiffs Thomas*
*Carranza, Jesus Martinez, Richard*
*Barnum, Thomas Lewis, Michael*
*Lewis, Colby Propes, and Chad Hunter*

ON BEHALF OF PLAINTIFFS

Matthew J. Hegarty, Esq.
Andrew D. Ringel, Esq.
John F. Peters, Esq.
of HALL & EVANS, LLC
1001 17th Street, Suite 300
Denver, CO 80202
T: (303) 628-3300
F: (303) 628-3368
hegartym@hallevans.com
ringela@hallevans.com
petersj@hallevans.com
*Attorneys for Defendant Sheriff*
*Steven Reams*

ON BEHALF OF DEFENDANT