IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 20-cv-00977-PAB-SKC

JESUS MARTINEZ, and
CHAD HUNTER,

    Plaintiffs, on their own and on behalf of a class of similarly situated persons,

v.

STEVEN REAMS, Sheriff of Weld County, Colorado, in his official capacity,

    Defendant.

## ORDER

    This matter is before the Court on the parties' Joint Motion for Final Approval of Class Action Settlement and Final Certification of the Proposed Class [Docket No. 105]. On April 7, 2020, plaintiffs brought this case as a class action alleging that defendant Sheriff Steven Reams acted with deliberate indifference to the health of medically vulnerable persons in custody at the Weld County Jail ("WCJ") by failing to take necessary measures to prevent the spread of COVID-19. Docket Nos. 1, 7 at 25-27.

**I. BACKGROUND**

    On April 7, 2020, plaintiffs filed a motion for a preliminary injunction. Docket No. 1. On April 30, 2020, the Court conducted a hearing on plaintiffs' preliminary injunction motion. Docket No. 52. On May 11, 2020, the Court issued a preliminary injunction that identified actions defendant had to take to protect medically vulnerable inmates at

the WCJ.  *See generally* Docket No. 55.  This preliminary injunction was extended several times and expired on February 5, 2021.  *See* Docket No. 99.

On November 30, 2020, the parties filed a joint motion for preliminary approval of the class action settlement, certification of a class and appointment of class counsel, and permission to post class notice.  Docket No. 96.  The Court ordered the parties to file a supplemental brief on the issues of notice, the definition of the class, and where objections to the settlement should be mailed.  Docket No. 100 at 23.  Upon review of the parties' supplement, the Court preliminarily approved the proposed consent decree and final judgment, preliminarily certified the proposed class, appointed plaintiffs' attorneys as class counsel, and set the case for a fairness hearing.  Docket No. 102 at 4.  On February 11, 2021, the parties filed a joint motion for final approval of the class action settlement and certification of the proposed class.  Docket No. 105.  The Court held a fairness hearing on February 12, 2021.  Docket No. 109.  At the fairness hearing, the Court indicated that it would grant the motion for final approval and would sign the proposed consent decree and final judgment.  *See id.*

## II. FINAL APPROVAL OF CLASS ACTION CERTIFICATION

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this

litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

District courts have broad discretion in granting or denying class certification. *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso* ("*Shook II*"), 543 F.3d 597, 603 (10th Cir. 2008).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  Where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004)).  Here, the parties jointly moved for certification for the purposes of settlement only.  *See* Docket No. 96 at 10 n.2 (defendant reserves the right to contest class certification if the settlement is not approved).

**A.  Rule 23(a)**

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Court found each of the requirements met in the order on the motion for preliminary approval, Docket No. 100 at 7-13, and incorporates those findings herein.[1] Accordingly, the requirements of Rule 23(a) are met.

## B. Rule 23(b)(2)

The Court preliminarily certified the class under Rule 23(b)(2), Docket No. 102 at 4, which states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) certification imposes two independent but related requirements: defendant's actions or inaction must be based on grounds generally applicable to all class members and the injunctive relief must be appropriate for the class as a whole. *Shook II,* 543 F.3d at 604. The Court previously found that preliminary certification under Rule 23(b)(2) was appropriate, Docket No. 100 at 15, and the Court now finds that final certification is appropriate for the same reasons.

## III. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Consent Decree and Final Judgment

The class consists of

> All present and future inmates housed within the Weld County Jail from April 7, 2020 through the "COVID-19 Emergency End Date" who are

---

[1] At the fairness hearing, counsel for defense stated that at least one of the named plaintiffs was still held at the WCJ. The Court found in its order on the motion for preliminary approval that both named plaintiffs brought claims that are typical of the proposed class. Docket No. 100 at 11-12. The fact that only one may remain at the jail does not defeat typicality.

> "medically vulnerable."
>
> "Medically vulnerable" means inmates who, pursuant to CDC guidelines for correctional facilities like the WCJ which exist as of the date this proposed Consent Decree and Final Judgment was submitted to the Court, have one or more of the following conditions: are 65 years and older; have chronic lung disease including COPD; have moderate to severe asthma; have serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies; have sickle cell disease; are immunocompromised; have severe obesity (e.g. BMI of 30 or higher); have diabetes; have chronic kidney disease and are undergoing dialysis; have liver disease; have cancer; are pregnant; or are former or current cigarette smokers.
>
> The "COVID-19 Emergency End Date" is the date on which Executive Order D 2020 205 issued by Colorado Governor Jared Polis, Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado, as subsequently amended or extended, expires and is not replaced by a similar Executive Order in light of the ongoing COVID-19 pandemic.

Docket No. 110 at 2, 5. There are no subclasses. Key terms of the consent decree include that: (1) WCJ will identify medically vulnerable inmates during booking, protect them during the remainder of the intake process to the extent possible, and provide them with a document stating their status; (2) WCJ will attempt to single-cell medically vulnerable inmates in the intake/transition units and will continue to limit their exposure in the general jail population; (3) WCJ will medically isolate COVID-19 positive inmates in a non-punitive environment; (4) WCJ will continue enhanced sanitation and will distribute masks to inmates; (5) healthcare processionals will monitor medically vulnerable inmates for COVID-19 symptoms and will provide testing to inmates consistent with CDC guidelines; (6) defendant will maintain modified arrest standards to reduce jail population and will advise Weld County police chiefs to be judicious with jail space on a regular basis; (7) every two weeks, WCJ will provide the Chief Judge for

the Nineteenth Judicial District of Colorado and the Colorado Division of Adult Parole a list of all inmates housed at WCJ, with a request to the Chief Judge for a docket review for potential judicial action; (8) defendant will comply with data reporting requirements and plaintiffs' counsel will not make additional requests; (9) plaintiffs and the class will release claims for injunctive and declaratory relief arising from COVID-19 at the WCJ, but that does not include claims concerning conduct that occurs after the date the Consent Decree is entered, and it does not include any money damages claims; (10) defendant will pay counsel for plaintiffs $122,387.60 in attorney's fees and costs; and (11) there is no admission of wrongdoing by defendant. *Id.* at 5-8.

### B. Notice to the Settlement Class

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Court found that the parties' initial proposed notice was inadequate and ordered the parties to file supplemental briefing on notice. Docket No. 100 at 20. In the supplemental briefing, the parties stated that each page of the notice would be shown in English and Spanish for two minutes every day during the course of the daily inmate video briefing with a once-through repeat, meaning that the notice would be posted for 32 minutes each day during the

notice period.  Docket No. 101 at 7.  Additionally, the video broadcast would inform inmates that a paper copy of the notice was available for review upon request at the guard station in each housing unit, and each guard station would contain an English and Spanish version of the notice.  *Id.*  The Court found that this proposed notice procedure was designed to reasonably apprise class members of the proposed settlement, and thus satisfied Rule 23(e)(1).  Docket No. 102 at 4.  The parties' motion for final approval states that notice was posted in this manner from January 1, 2021 to February 5, 2021.  Docket No. 105 at 4.  At the fairness hearing, the Court found that this notice procedure satisfied Rule 23(e)(1).  Docket No. 109.

### C.  Objections

The Court received two objections to the consent decree.[2]  Docket No. 105 at 4-5.  Mr. Bret Brockel, who is a member of the class currently confined at the WCJ, objected on the basis that he wishes to recover money damages from the jail.  Docket No. 106.  Because the consent decree preserves the right of a class member to bring a separate lawsuit seeking money damages, the Court overruled his objection at the fairness hearing.  Docket No. 109 at 1.

At the fairness hearing, Mr. Patrick D. Kane objected that certain deputies in WCJ were not wearing masks or practicing social distancing, surfaces were not cleaned regularly, hand sanitizer stations that the defendant claimed were in use were

---

[2] The motion for final approval states that Jesus Martinez, a named plaintiff, submitted a letter to class counsel in response to the proposed consent decree regarding his conditions of confinement.  Docket No. 105 at 5.  However, Mr. Martinez requested that his letter not be submitted to the Court as an objection, and he did not appear at the fairness hearing to object.  *See id.*

in fact nonexistent, and the lockdowns in the jail were excessive.  Mr. Kane additionally noted that he had filed five grievances with WCJ on these matters.  The Court found that all of the issues raised by Mr. Kane are addressed in the consent decree.  *See* Docket No. 110 at 10-11 (WCJ must allow the maximum daily out-of-cell time it can provide while adhering to cohorting and social distancing, WCJ must ensure enhanced sanitation in housing units, and all WCJ staff and third party contractors are required to wear a face mask at all times when interacting with inmates).  Additionally, the consent decree requires WCJ to report to the ACLU of Colorado, *inter alia*, average daily populations of medically vulnerable inmates and the number and results of COVID-19 tests administered.  *Id*. at 14.  To the extent WCJ fails to abide by the terms of the consent decree, plaintiffs' counsel may informally resolve the issue or may seek to enforce the consent decree with the Court through contempt proceedings.  The Court also noted at the fairness hearing that Mr. Kane has the remedy of filing grievances available to him.  Accordingly, Mr. Kane's objection is overruled.

### D.  Analysis of Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements

affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

At the fairness hearing, the Court found that the consent decree was fair, reasonable, and adequate because it met all of the factors outlined by *Rutter*. See Docket No. 109. The consent decree was the product of months of arms-length negotiations between the parties. Docket No. 105 at 3. These negotiations took place after the parties had vigorously litigated a motion for preliminary injunction. *See* Docket No. 55 at 3 n.2 ("The parties also submitted a volume of exhibits to the Court more typical of a four-day jury trial than a preliminary injunction hearing."). The Court

finds that the negotiations were done fairly and honestly. Serious questions exist regarding this complex litigation, especially given the ever-changing nature of the COVID-19 pandemic. The value of immediate recovery clearly outweighs the mere possibility of future relief because implementation of the COVID-19 safety measures in the consent decree are much more valuable now than in the future. The parties believe that the consent decree is fair and reasonable and was negotiated at arms length by experienced counsel. Docket No. 96 at 8. Accordingly, the Court finds that the consent decree is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV.  ATTORNEY'S FEES AND COSTS

The consent decree includes a payment of $122,387.60 from defendant to plaintiffs' counsel. Docket No. 110 at 14. In a certified class action, the court may award reasonable attorney's fees that are authorized by the parties' agreement provided that (1) the claim for an award is made by motion under Rule 54(d)(2) and notice of the motion is directed to class members; (2) a class member or party from whom payment is sought may object; and (3) the Court finds facts and states its legal conclusions. Fed. R. Civ. P. 23(h). The parties included the attorney's fees provision in their joint motion for preliminary approval and the notice provided to class members. Docket No. 96 at 8; Docket No. 101-1 at 3. The parties submitted a breakdown of the attorney's fees calculation applying the lodestar method, as informed by the rate caps and requirements of the Prison Litigation Reform Act ("PLRA"). Docket No. 105 at 6-7. The $122,387.60 fee represents a discount of approximately 55% off what plaintiffs' counsel would typically have charged without the application of the PLRA. *Id.* at 9. Additionally, this amount does not account for approximately 81 hours of additional

work done after July 2020.  *Id.*  The Court finds that the attorney's fees award of

$122,387.60 is reasonable and appropriate.[3]

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** the parties' Joint Motion for Final Approval of Class Action

Settlement and Final Certification of the Proposed Class  [Docket No. 105] is

**GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Class Certification [Docket No. 2] is

**DENIED AS MOOT**.  It is further

**ORDERED** that pursuant to Rule 23(b)(2) of the Federal Rules of Civil

Procedure, and for the purposes of settlement only, the class is certified as follows:

> All present and future inmates housed within the Weld County Jail from April 7, 2020 through the "COVID-19 Emergency End Date" who are "medically vulnerable."
>
> "Medically vulnerable" means inmates who, pursuant to CDC guidelines for correctional facilities like the WCJ which exist as of the date this proposed Consent Decree and Final Judgment was submitted to the Court, have one or more of the following conditions: are 65 years and older; have chronic lung disease including COPD; have moderate to severe asthma; have serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies; have sickle cell disease; are immunocompromised; have severe obesity (e.g. BMI of 30 or higher); have diabetes; have chronic kidney disease and are undergoing dialysis; have liver disease; have cancer; are pregnant; or are former or current cigarette smokers.

---

[3] The Court has previously found that the consent decree complies with the PLRA.  Docket No. 100 at 21-23.  The Court incorporates that finding herein.

>The "COVID-19 Emergency End Date" is the date on which Executive Order D 2020 205 issued by Colorado Governor Jared Polis, Declaring a Disaster Emergency Due to the Presence of Coronavirus Disease 2019 in Colorado, as subsequently amended or extended, expires and is not replaced by a similar Executive Order in light of the ongoing COVID-19 pandemic.

It is further

**ORDERED** that the Court finds, solely for the purposes of this settlement, that the prerequisites for a class action under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the settlement class are so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the named plaintiffs are typical of the claims of the class; (d) the named plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of all of the class members; and (e) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. It is further

**ORDERED** that the Court finds that the notice given to members of the class was reasonably calculated under the circumstances to apprise such members of the pendency of this action and to afford them an opportunity to object to. Because the Court has afforded a full opportunity to all class members to be heard, the Court further determines that all members of the class are bound by the Consent Decree and Final Judgment. It is further

**ORDERED** that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court finds that the Consent Decree and Final Judgment is fair, reasonable, and

adequate.  Accordingly, the Court gives final approval to the Consent Decree and Final Judgment in all respects and authorizes and directs the parties to consummate the Consent Decree and Final Judgment in accordance with its terms and provisions.  It is further

**ORDERED** that the parties and their counsel shall fulfill their obligations and duties under the Consent Decree and Final Judgment.  It is further

**ORDERED** that plaintiffs and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the Consent Decree and Final Judgment.  It is further

**ORDERED** that defendant shall pay plaintiffs' counsel $122,387.60 in accordance with the procedures set forth in the Consent Decree and Final Judgment.  It is further

**ORDERED** that neither this Order nor the Consent Decree and Final Judgment is an admission or concession by defendant respecting any facts, liabilities, or wrongdoing.  It is further

**ORDERED** that, without affecting the finality of this Order, this Court retains jurisdiction to consider all further matters arising out of or connected with the Consent Decree and Final Judgment, including its implementation and enforcement.  It is further

**ORDERED** that judgment shall be entered dismissing this case with prejudice.

DATED February 16, 2021

                                            BY THE COURT:

                                            PHILIP A. BRIMMER
                                            Chief United States District Judge